```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

UNITED STATES OF AMERICA                :
                                                    04 Cr. 0283 (PAC)
    -against-                           :
                                                    MEMORANDUM OPINION
RUBEN CANINI,                           :           AND ORDER

           Defendant.                   :

------------------------------------------------------------X
```

PAUL A. CROTTY, United States District Judge:

On June 15, 2006, a jury found Defendant Ruben Canini ("Defendant" or "Canini") guilty on all three counts of the indictment charging him with a conspiracy to distribute one kilogram or more of heroin ("Count 1")[1]; distributing and possessing with intent to distribute heroin on September 29, 2003 ("Count 2"),[2] and distributing and possessing with intent to distribute heroin on October 2, 2003 ("Count 3").[3] Defendant now moves for a judgment of acquittal pursuant to Fed.R.Crim.P. 29(c) and for a new trial pursuant to Fed.R.Crim.P. 33 with respect to Counts 1 and 3.[4] Canini does not challenge his conviction on Count 2.

---

[1] In violation of 21 U.S.C. §§ 812, 841(a)(1) & 841(b)(1)(A).
[2] In violation of 21 U.S.C. §§ 812, 841(a)(1) & 841(b)(1)(C).
[3] In violation of 21 U.S.C. §§ 812, 841(a)(1) & 841(b)(1)(C).
[4] Canini timely filed requests to extend his time to perfect his motions. At the time of Canini's responsive brief on September 25, 2006, his counsel indicated there had been "an altercation" between the two and there was a complete breakdown in communications; and he requested permission to withdraw. (Krakow Letter 9/25/06.) Counsel filed the responsive brief but indicated he was not certain that it was complete in light of his inability to communicate with his client. It was filed "with the specific request that Mr. Canini or new counsel be permitted to make additional submissions to the Court regarding the issues raised in the Rule 29 and Rule 33 motions (Krakow Letter 9/25/2006)." That request was granted. New counsel, Dawn Cardi, was appointed on October 23, 2006 and granted leave to file supplemental response papers prior to November 13, 2006. That time was extended to November 21, 2006. No supplemental response papers were submitted. Oral argument was heard on December 5, 2006.

As to Count 1, Canini argues that there was insufficient evidence that he participated in the conspiracy or conspired to distribute one kilogram or more of heroin, and that the testimonies of the Government's two cooperating witnesses, Victor Virella ("Virella") and Eppie Benitez ("Benitez"), should be disregarded as inconsistent.

As to Count 3, Canini argues again that there was insufficient evidence that he possessed heroin with the intent to distribute.

## I.  Applicable Law

Both the Government and Defendant agree that the Defendant bears a "heavy burden" on this motion.  United States v. Matthews, 20 F.3d 538, 548 (2d Cir. 1994).  When a defendant moves for a judgment of acquittal, the Court must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt.  See United States v. Mariana, 725 F.2d 862, 865 (2d Cir. 1984).  If the Court concludes that upon the evidence there must be such a doubt in a reasonable mind, it must grant the motion for acquittal.  But if a reasonable doubt or no reasonable doubt is fairly possible to a reasonable mind, then the jury verdict must be upheld.  See id.  Finally, this Court must look at the totality of the Government's case, examine all evidence in the light most favorable to the Government, and analyze the evidence not in bits and pieces, but in its entirety.  See United States v. Autuori, 212 F.3d 105, 108 (2d Cir. 2000).

## II.  Count One:  Conspiracy to Distribute One Kilogram or More of Heroin

Canini makes three points in support of his argument that there is insufficient evidence that he conspired to distribute one kilogram or more of heroin:

(1) The time period of Canini's involvement in the conspiracy was too limited to support the finding that he participated in a conspiracy to distribute one kilogram or more of heroin;

(2) Canini's knowledge of the scope of the conspiracy was too limited to reasonably foresee the distribution of one kilogram or more of heroin;

(3) The quantity of heroin sold during Canini's involvement in the conspiracy did not amount to one kilogram or more of heroin.

Canini contends that the evidence shows, at most, that his involvement with the conspiracy began in late August 2003, and lasted through October 2, 2003, with two periods of absence. Despite extensive surveillance, the only police observation of Canini was on September 29, 2003, when he was seen selling heroin on Vyse Street. However, Det. Vega testified that there was no "Absolute Power"[5] being sold on Vyse Street on the day that Canini was observed selling. Det. Gergley testified that when Canini was observed selling heroin, he was given the name "John Doe" because he was unknown to investigation at that time. Also, from September 22 through 25, 2003, Canini was at an in-patient drug treatment facility so he could not have been involved in the conspiracy during that time. Virella also testified that Canini left the conspiracy for a period of time in late August to early September. Accordingly, Canini argues that his

---

[5] Absolute Power was the brand name for the heroin sold on Vyse Street. If Canini was selling something other than Absolute Power, he argues it was not part of the conspiracy alleged in the indictment.

involvement in the conspiracy is limited mostly to the month of September until his arrest on October 2, 2003.

Second, Canini points to Virella's testimony that he did not trust Canini and, accordingly, he intentionally limited Canini's knowledge and scope of the conspiracy. Canini worked for him as a "pitcher" but with limited hours, approximately 4 hours per day in September. Canini claims he had "nothing to do" with "the major part of the conspiracy" which involved the stash at his brother's, Ishmael Canini, apartment. (See Krakow Letter 9, 9/23/06.) Accordingly, the evidence was insufficient to charge Canini with the knowledge of the full scope of the conspiracy.

Third, Canini contends that the evidence is insufficient that he or the conspiracy sold one kilogram or more of heroin. Virella testified that the conspiracy sold 20-25 bundles of heroin a day during the summer through September 2003. One kilogram of heroin consisted of about 1500 bundles. Although Virella testified that Canini began working for him in July, Canini argues there is "little in the record to corroborate this guess." (See Krakow Letter 9-10, 9/23/06.) The conspiracy sold 25 bundles per day at most, and he would have had to participate in the conspiracy for at least 60 days to incur liability for 1500 bundles of heroin. Canini maintains his involvement was less than that, given his version of the starting time, his drug treatment, the absence from the conspiracy at end of August, and his arrest on October 2, 2003. Therefore, for Canini to be liable, he would have to be held responsible for his co-conspirator's actions, but the evidence is insufficient that he had knowledge of the extent of the conspiracy because his knowledge was intentionally limited.

Finally, Canini contends that acquittal is warranted on Count 1 because the testimonies of Virella and Benitez are irreconcilable.  The most egregious inconsistency concerned Canini's trustworthiness.  Benitez testified that although he personally never had a problem with Canini, his job as manager was to watch him because Virella did not trust him.  Consequently, their testimonies should be disregarded in full.

Notwithstanding Canini's arguments, there was ample evidence to support the jury verdict.  There was extensive direct evidence of the existence of the conspiracy and Canini's knowing participation in it—the two essential elements of conspiracy.  The Government's two cooperating witnesses, Virella and Benitez testified in detail about the Absolute Power conspiracy and Canini's participation and knowledge of it; they were both consistent on this point.  Defendant's attacks on the testimonies of Virella and Benitez is rather an attack on their credibility.  But that is squarely for the jury to decide.  See United States v. Glenn, 312 F.3d 58, 64 (2d Cir. 2002) (holding that the court must differ to the jury's findings of credibility "[e]ven though each of the Government witnesses…pled guilty to large-scale drug dealing and testified pursuant to cooperation agreements with the Government and even through their testimony was pock-marked with inconsistencies, at this stage, we credit what they said").  As for the alleged inconsistencies between Virella and Benitez's testimony that Canini considers fatal, it is clear that they occupied different roles in the heroin conspiracy so it would be rational for a jury to infer that they could have different perspectives as to Canini's trustworthiness.  In any event, the jury was fully supported in its verdict by the testimony since they both

5

testified in detail that Canini was a knowing participant in the conspiracy, including his specific role in the conspiracy and the hours he worked.

As to the weight of the heroin, a rational jury could have found that Canini knew or reasonably could have foreseen that the conspiracy was distributing one kilogram or more of heroin. The testimony made clear that Absolute Power heroin was sold on Vyse Street in the Bronx from early dawn to late evening. Virella testified that Canini worked everyday as a "pitcher" from July 2003 through August 2003, during Rosario's evening shift. In September 2003, he began "pitching" for Benitez in September 2003, until his arrest on October 2, 2003. Benitez also testified that Canini worked for the conspiracy during that summer. Virella testified that the conspiracy could sell up to 40 bundles, seven days a week. Benitez testified that the shift he and Canini worked usually sold about 20 to 30 bundles. Canini worked both morning and evening shifts at points, giving him ample opportunity to become aware of the scope of the conspiracy. Therefore, a rational jury could have found that the conspiracy was selling one kilogram or more of heroin every 60 days, and that Canini knew or reasonably could have forseen this quantity. As for the breaks in the involvement in the conspiracy, including the in-patient treatment for 4 days, they are immaterial. See United States v. Pico, 2 F.3d 472, 476 (2d Cir. 1993) (holding that despite "limited participat[ion]" in a "large conspiracy," the defendant may "avoid the statutory minimums only if….the individual did not know and could not reasonably foresee the amounts [of narcotics] involved in the conspiracy").

Alternatively, Canini argues that there is insufficient evidence that he participated in the conspiracy. This argument is based on the supposed inconsistency in

6

stole from him. This is not inconsistent, for the reasons previously given, but even if it were, it is a credibility issue for the rational jury to determine.

### III.  Count Three: Distributing & Possession with Intent to Distribute Heroin

Finally, Canini argues that he should be acquitted of the charge of possession with intent to sell heroin. It is conceded that Canini did not have heroin on his person at the time of arrest. Therefore, he argues there was insufficient evidence for the jury to conclude that he possessed heroin with the intent to sell it.

However, Benitez testified that he was "managing" Canini and selling heroin with him on the day of the arrest. Furthermore, the two police officers who made the arrest testified that when they came on the scene, they observed Benitez grab the heroin back from Canini. The jury could rationally conclude that Benitez was managing Canini and that was why Benitez took responsibility for the drugs by reclaiming the heroin from Canini.

### Conclusion

The motion for an acquittal and for a new trial is DENIED in all respects. Ruben Canini's sentencing is scheduled for Wednesday, March 7, 2007 at 2:30 p.m. The Probation Department shall conduct the PSI in light of the sentencing date. Defense counsel may participate in any interview of Mr. Canini.

Dated: New York, New York
       December 6, 2006

SO ORDERED

*[signature]*
PAUL A. CROTTY
United States District Judge

7