UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
:
UNITED STATES OF AMERICA,                :
:
:
:
  -v-                                    :
:
RUBEN CANINI,                            :         04 Cr. 283 (PAC)
:
  *Defendant.*                           :
:         **OPINION & ORDER**
:
------------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

On May 20, 2020, Defendant Ruben Canini ("defendant" or "Canini"), who suffers from severe and chronic asthma filed an emergency motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) in light of the COVID-19 pandemic. (Def. Mot., Dkt. 330.) Canini was convicted by jury of conspiring to distribute one kilogram and more of heroin in violation of 21 U.S.C. § 846 and 841(b)(1)(A), and two counts of possession of heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(c). (Gov. Opp'n, Dkt. 334.) Canini has served nearly 192 months of a 240-month sentence. (*Id.*)

Canini contends that his severe asthmatic condition places him at serious risk of grave illness or death as a result of the COVID-19 pandemic constituting "extraordinary and compelling" circumstances warranting a sentencing reduction. (*See* Def. Mem., Dkt. 331.) Canini reports difficulty managing his asthmatic condition while in prison, that he has not been supplied with his steroid inhaler despite his doctor's prescription, and that he has been forced to share a cell with multiple inmates potentially exposed to COVID-19 despite his high-risk status. (*Id.* at 17-19; Hart Dec. Ex. K, Dkt. 332-11.) The Government does not dispute that defendant's

1

health conditions establish "extraordinary or compelling reasons" within the meaning of Section 3582(c) based on the heightened risk the condition poses in light of COVID-19 pandemic. (Gov. Opp'n, at 4.) The Government, however, opposes the application on the grounds that the Section 3553(a) factors weigh against granting compassionate release. (*Id.* at 9.)

COVID-19, a novel severe acute respiratory illness has killed more than 100,000 people nationwide. The Court recognizes that COVID-19 has spurred a public health crisis and national emergency with a recommended treatment of social distancing, which is difficult to achieve in federal prison facilities. Current conditions present new and complex challenges for protecting inmates' health and the question of whether compassionate release is warranted during the pandemic remains a dynamic and fact-intensive inquiry.

For the reasons set forth below, defendant's motion is granted.

## COMPASSIONATE RELEASE

It is well established that "[a] court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Gotti*, No. 02-CR-743-07 (CM), 2020 WL 497987, at *1 (S.D.N.Y. Jan. 15, 2020). The compassionate release provision allows a district court to "reduce the term of imprisonment" where it finds "extraordinary and compelling circumstances." 18 U.S.C. § 3582(c)(1)(A)(i). A motion under this provision may be made by either the BOP or a defendant, but in the latter case only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

Where a defendant has exhausted his administrative requirements, compassionate release provides a mechanism for a court to reduce a term of imprisonment where, after considering the

factors set forth in Section 3553(a), the court finds, "extraordinary and compelling reasons" warrant such a reduction and such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.  18 U.S.C. § 3582(c)(1)(A)(i).  Application Note 1 to U.S.S.G. § 1B1.13 addresses when extraordinary and compelling reasons exist: where the defendant is (i) "suffering from a terminal illness" or (ii) a "serious physical or medical condition ... that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility," or (iii) is at least 65 years old, "experiencing a serious deterioration in physical or mental health because of the aging process" in combination with amount of time served, or (iv) if, in the judgment of the BOP, the defendant's circumstances are extraordinary and compelling for "other reasons."  U.S.S.G. § 1B1.13(1)(A) & Application Note 1(A), (B), (D).

In practice, compassionate release motions have required courts to make fact-intensive determinations considering the unique circumstances and context of each individual defendant.  *See United States v. Kaba*, No. 19 CR. 242 (PAC), 2020 WL 2520807, at *1 (S.D.N.Y. May 18, 2020); *United States v. Hart*, No. 17 CR. 248 (VSB), 2020 WL 1989299, at *6 (S.D.N.Y. Apr. 27, 2020).  Courts in this district have generally considered the age of the defendant; the severity and documented history of the defendant's health conditions, as well as the defendant's history of managing those conditions in prison; the presence and proliferation of infections in the prison facility at issue; the proportion of the term of incarceration that the defendant has served; and the sentencing factors in 18 U.S.C. § 3553(a), with an emphasis on the nature and seriousness of the offense, the need for deterrence, and the need to protect the public.  *E.g.*, *United States v. Brady*, No. S2 18 CR. 316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020) (internal citations omitted); *United States v. Martin*, No. 18-CR-834-7 (PAE), 2020 WL 1819961, at *4 (S.D.N.Y.

Apr. 10, 2020).

## APPLICATION

Defendant, through his partner, submitted his application for release to the Warden at FCI Cumberland on April 8, 2020. *See* Hart Dec. Ex. A, Dkt. 332-1. On April 15, 2020, the Warden denied the defendant's compassionate release request. *See* Hart Dec. Ex. C, Dkt. 332-3. The Government does not dispute that the defendant has satisfied the statutory exhaustion requirement with respect to this application. *See* Gov. Opp'n at 4. Thus, the parties agree that the Court has authority to determine the merits of Canini's application.

The Court concludes that the circumstances here are sufficiently extraordinary and compelling to justify Canini's release under 18 U.S.C. § 3582(c)(1)(A)(i). The COVID-19 pandemic's impact on the health of millions of people across the world is evident. As of June 1, 2020, over 6 million people have been infected globally and more than 370,000 have died.[1] Nationwide, the illness has killed more than 100,000 people.[2] Currently, there is no known cure or vaccine. Some of those infected are asymptomatic and thus, may unwittingly infect others. During this pandemic, the virus has not spared Bureau of Prison ("BOP") facilities—affecting both those detained as well as staff working inside the facilities.[3] The nature of prisons has made recommended social distancing difficult to achieve. Canini's medical condition—moderate to severe chronic asthma, and documented history of respiratory issues places him at high-risk of serious illness or death should he be exposed to the novel severe acute respiratory illness:

---

[1] Johns Hopkins University & Medicine, *COVID-19 Dashboard*, https://coronavirus.jhu.edu/map.html.

[2] *See id.*

[3] FCI Cumberland has had positive COVID-19 cases among inmates and staff. The Government represents that those infected have now recovered. (*See* Gov. Opp'n, at 7.)

COVID-19.[4]  Further, Canini's application demonstrates that he is not receiving adequate medical care that is necessary to control his asthma in prison during the pandemic.

The Government does not dispute that the defendant's medical condition qualifies as "extraordinary and compelling reasons" for release during the current COVID-19 pandemic. (*See* Gov. Opp'n at 9.)  Canini, who is 46-years old, suffers from chronic moderate to severe, uncontrolled asthma and uses an albuterol inhaler every other day, and has a history of respiratory issues[5] while incarcerated (*see* Def. Mem., at 18; Hart Dec. Ex. G); thus, he falls squarely within the CDC's high-risk classification of those most likely to contract and suffer serious, if not fatal complications from COVID-19.[6]  Significantly, Canini's application and medical records also indicate his asthma is currently under treated while in prison.  Specifically, although Canini has received his albuterol inhaler, he has been denied his steroid prescription inhaler, Asmanex, which was prescribed by his doctor and has been part of his asthma treatment for the past ten years.  (*See* Def. Mem., at 18; Hart Dec. Ex. G.)   Such under treatment compromises Canini's ability to provide self-care for his asthma condition and directly conflicts with the CDC's guidance for asthmatics during COVID-19, which warns against asthmatics discontinuing or changing their asthma plan, and instructs that asthmatics should continue

---

[4] According to the Center for Disease Control and Prevention (the "CDC"), people with ailments that cause trouble breathing, particularly asthma, or compromise their immune system are at a significantly higher risk. *See* Center for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19): *People with Moderate to Severe Asthma*, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html.

[5] Medical records indicate that the defendant recently suffered a severe asthma attack on May 10, 2020 where he reported difficulty breathing and that his inhaler was not working. (*See* Gov. Opp'n, Ex. 2.)  In October 2017, the defendant was taken to the emergency room for treatment related to "mild acute asthma exacerbation."  (*Id.*)

[6] On April 17, 2020, the CDC released a report indicating that 27.3% of those hospitalized for COVID-19 between the ages of 18-49 had asthma.  Asthma was the one of the most prevalent underlying conditions in patients hospitalized for COVID-19 within that age bracket.  *See* Center for Disease Control and Prevention, *Hospitalization Rates and Characteristics of Patients Hospitalized with Laboratory-Confirmed Coronavirus Disease 2019 — COVID-NET, 14 States, March 1–30, 2020*, Morbidity and Mortality Weekly Report, https://www.cdc.gov/mmwr/volumes/69/wr/mm6915e3.htm?s_cid=mm6915e3_w.

current medications including inhalers with steroids. *See* Center for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19): *People with Moderate to Severe Asthma*, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html.

Accordingly, the Court concludes that Canini, like other high-risk defendants, has demonstrated "extraordinary and compelling" reasons for release. *See e.g.*, *United States v. Smith*, No. 12 CR. 133 (JFK), 2020 WL 1849748, at *5 (S.D.N.Y. Apr. 13, 2020) (finding defendant's medical condition including asthma, among others, constituted "extraordinary and compelling reasons" to order compassionate release); *United States v. Park*, No. 16-CR-473 (RA), 2020 WL 1970603, at *3 (S.D.N.Y. Apr. 24, 2020) (finding, *inter alia*, defendant's asthma and documented history of respiratory issues presented an "extraordinary and compelling reason" for release).

In addition, the Court finds that the defendant's request for compassionate release is consistent with the Section 3553(a) sentencing factors and the applicable policy statements issued by the Sentencing Commission. Canini's conduct, participating in a heroin scheme, was undoubtedly serious, but as the Court noted at sentencing, Canini in his 20's was a "worker" and a "pitcher," not a manger of the conspiracy. (Sent. Tr. at 22-23, Dkt. 238.) Canini has served the majority (80%) of his sentence (192 months of a 240-month sentence); a sentence that balances the seriousness of his criminal conduct with the need to promote deterrence and respect for the law. Here, granting compassionate release would not produce a sentencing disparity: although the Court found Canini worked as a "pitcher" and was a lower level conspiracy participant, his sentence was almost twice as long as the sentences of all of the other conspiracy participants because of his applicable criminal history.[7]

---

[7] As noted at the sentencing in rejecting a sentence of 360-months, the Court was troubled by the potential sentencing disparity. The maximum sentence imposed on other higher-level conspiracy members was 135 months,

Further, while incarcerated over the past sixteen years, Canini has taken steps to rehabilitate himself; he earned his GED and successfully completed several programs including anger management programs, phase one and two of rational thinking, Turning Point Modules for gambling, coping, and a drug education class.  Canini also presents a thoughtful release plan that provides a stable living situation with his partner and family in Rhode Island, away from those in New York that he was associated with when he charged over a decade ago.  Having considered the 3553(a) sentencing factors and applicable policy statements, the Court concludes that granting the defendant's motion for compassionate release is consistent with the goals of sentencing and promotes respect for the law.

## CONCLUSION

For the reasons stated, the defendant's motion for compassionate release is GRANTED. The defendant's sentence of incarceration is reduced to time served pursuant to 18 U.S.C. § 3582(c)(1)(A).  Upon his release, the defendant shall serve ten years of supervised release as previously imposed and is subject to the other conditions previously imposed by the Court as set forth in the judgment dated July 20, 2007.  *See* Dkt. 231.  The Clerk of the Court is directed to terminate the motion at Docket 330.

Dated: New York, New York  
      June 8, 2020

SO ORDERED

*[signature]*

PAUL A. CROTTY  
United States District Judge

---

but Canini despite his role as a "pitcher" received a sentence of 240-months because of his criminal history.  *See* Sent. Tr. at 17, 24 ("[T]he maximum time that anybody received in this is 135 months and given Mr. Canini's role in the crime there would be an unwanted disparity in sentencing if he was sentenced to 360 months. 240 months is almost twice what everybody else was given.").